UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF CASE

------------------------------------------x
:
Charmaine Cooke,                                    06 Civ. 6422 (AKH)
:
                        Plaintiff,
:
        - against -                                 **<u>COMPLAINT</u>**
:
Eat Inc.,                               :           **JURY TRIAL DEMANDED**
:
                        Defendant.
:
------------------------------------------x

## <u>JURISDICTION AND VENUE</u>

1.  This is an action against Eat Inc. under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York State Human Rights Law, Executive Law § 296 *et seq.* ("NYSHRL") and New York City Human Rights Law, Administrative Code §§ 8-102 *et seq.* ("NYCHRL"), and the New York State Labor Law § 160 *et seq.* ("N.Y. Labor Law").

2.  This Court has jurisdiction over plaintiff's federal claims pursuant

to the respective statutes and 28 §§ U.S.C. 1331, 1343.  Supplemental jurisdiction over plaintiff's NYSHRL, NYCHRL and N.Y. Labor Law claims is based on 28 U.S.C. § 1367(a).  Venue is proper in this district, same being the address of the parties and the place where the alleged discriminatory actions occurred.

## PARTIES

### PLAINTIFF

3.  Plaintiff, a 43-year old black woman, resides at 834 Penfield Street, Bronx, New York 10470.  Plaintiff, a United States citizen, was employed by defendant from September 1990 until she was terminated in April 2005.

4.  Plaintiff is afflicted with asthma, a medical condition widely known to be triggered and aggravated by dusty, dirty, rodent/roach infested and other unhygienic conditions.  Between 1996 and her April 2005 dismissal from defendant's employ, plaintiff endured several asthma-related hospitalizations stemming from the unhygienic conditions of her workplace.[1]

5.  Upon these hospitalizations, defendant would sometimes taunt plaintiff with statements like, "you can come back from your vacation now."

---

[1] These asthma attacks and hospitalizations did not begin until after plaintiff's 1995 transfer to defendant's corporate office.  Prior to said transfer, plaintiff worked in the retail environment.

**DEFENDANT**

6.  Defendant is a New York State corporation and a corporate holding concern, with a principal office at 1064 Madison Avenue, New York, New York 10028.  Upon information and belief, defendant employs over 50 persons.

7.  Upon information and belief, defendant is a privately held multi-faceted corporate conglomerate of gourmet food and associated retail, wholesale, and restaurant businesses.[2]

8.  Upon information and belief, it was defendant's policy to shift and assign employees, as needed or desired, between these related businesses.

**PLAINTIFF'S EEOC CHARGE**

9.  As a result of defendant's conduct alleged below, on June 9, 2005 plaintiff completed and filed an EEOC Intake Questionnaire and later on January 5, 2006 filed an EEOC Charge of Discrimination, which are incorporated herein.

10.   On July 5, 2006 the EEOC issued to plaintiff a Right to Sue Letter, and this suit is being commenced within 90 days of receipt thereof.

---

[2] EAT (Is Owned By Eli Zabar Inc.), EAT Gifts, Inc., Eli's Bread, Inc., Eli's Vinegar Factory, Inc., Eli's Manhattan Warehouse, Inc., The David Garage, Inc., TASTE Restaurant, and W.I.N.E.  The common current animating these divers entities is, upon information and belief, ownership by Eli Zabar.

**STATEMENT OF CLAIM**

11.    During September 1990 plaintiff, who had prior retail sales and administrative experience, commenced employment with defendant as a cashier.

12.    During 1995 defendant promoted plaintiff to the corporate bookkeeping department, where she worked directly with the Controller and book-keeper.  Plaintiff's duties included the usual accounts receivables and payables transactions (collectively "bookkeeping functions"), in addition to employment, licensing, and customer service duties (collectively "administrative duties").

13.    During 1998 plaintiff obtained a diploma in Senior Secretarial Studies, and during 2003 plaintiff obtained a BBA in advertising and marketing. At all material times herein, defendant was aware of plaintiff's said qualifications, and would sometimes assign plaintiff to tasks commensurate therewith.

14.    Whilst employed by defendant, plaintiff conscientiously and ably performed her bookkeeping functions and administrative duties.

15.    During plaintiff's employment, defendant maintained a custom and practice of paying a yearly bonus to certain employees.  Upon information and belief, qualification for said bonus required a minimum one year of employment.

4

16.     During plaintiff's employment, plaintiff was one of defendant's employees who would customarily, each year, receive a bonus payment.

17.     Upon information and belief, during plaintiff's employment with defendant, defendant maintained a custom and practice of awarding severance pay to certain departing employees.

18.     Upon information and belief, plaintiff was within the class of defendant's employees who would customarily, upon separation from employment, under defendant's custom and practice, receive severance pay.

19.     Severance pay was a week's pay for each year of employment.

**PLAINTIFF ANNOUNCES INTENT TO TAKE MATERNITY LEAVE**

20.     Plaintiff had timely notified defendant that she intended to take a three-month maternity leave of absence, beginning about April 2004, factually related to the birth and maternal care of plaintiff's expectant child whose birth was scheduled for May 2004.

21.     During April 2004 plaintiff embarked on a three-month FMLA sanctioned maternity leave, pursuant to 29 U.S.C. § 2612(a)(1)(A).

5

## PLAINTIFF IS INSTRUCTED TO TRAIN A "TEMP" BEFORE GOING ON MATERNITY LEAVE

22.     In connection with plaintiff's maternity leave request, defendant directed plaintiff to train and familiarize a "temp" who was to assume plaintiff's bookkeeping functions and administrative duties during her maternity leave.

23.     Whilst training the "temp" for plaintiff's bookkeeping functions and administrative duties, defendant assessed that the work load was too heavy for a solo employee.  Plaintiff's bookkeeping functions and administrative duties were then apportioned between the "temp" and another employee, Peter.

24.     The "temp" referred to in ¶¶22-23 above is a black woman and is, upon information and belief, at least 15 years younger than plaintiff.

25.     The employee "Peter" referred to in ¶23 above is a white man, and upon information and belief, is also much younger than plaintiff.

## PLAINTIFF VISITS DEFENDANT NEARING THE END OF HER MATERNITY LEAVE

26.     Prior to her scheduled mid-July 2004 return to work from FMLA maternity leave, plaintiff visited defendant's office in early July 2004.  During this

visit, defendant's Controller informed plaintiff that the "temp" referred to in ¶¶ 22-23 above had been or would be permanently hired to replace plaintiff.

27.    During the abovementioned early July 2004 visit to defendant's office, defendant's Controller also informed plaintiff that, upon plaintiff's return to work, plaintiff would be assigned the position and duties of another employee, Natalie, who was suffering from cancer and only infrequently visiting the office.

28.    Upon information and belief, Natalie's position and duties with defendant comprised two segments:  (i) Natalie substantially handled defendant's marketing and public relations efforts, and (ii) Natalie prepared defendant's economic models or business forecasts and engaged other bookkeeping functions.

## PLAINTIFF RETURNS FROM MATERNITY LEAVE AND WAS NOT RESTORED TO HER FORMER POSITION OR DUTIES

29.    Plaintiff timely returned to work from FMLA maternity leave on July 17, 2004, without any limitation, question or issue concerning her ability to undertake her former bookkeeping functions and administrative duties.

30.    Upon plaintiff's return to work on July 17, 2004 from FMLA leave, defendant did not restore plaintiff to her pre-leave bookkeeping position.

31.     Upon plaintiff's return to work on July 17, 2004 from FMLA leave, defendant did not restore plaintiff to her pre-leave administrative duties.

32.     Upon plaintiff's return to work on July 17, 2004 from FMLA leave, defendant did not assign plaintiff to any position equivalent to her pre-leave bookkeeping position.

33.     Upon plaintiff's return to work on July 17, 2004 from FMLA leave, defendant did not assign plaintiff to any duties equivalent to her pre-leave administrative duties.

34.     At no time after plaintiff's return to work on July 17, 2004, from FMLA maternity leave, did defendant restore plaintiff to her pre-leave bookkeeping position.

35.     At no time after plaintiff's return to work on July 17, 2004, from FMLA maternity leave, did defendant restore plaintiff to her pre-leave administrative duties.

36.     At no time after plaintiff's return to work on July 17, 2004, from FMLA maternity leave, did defendant assign plaintiff to any position equivalent to

her pre-leave bookkeeping position.

37.    At no time after plaintiff's return to work on July 17, 2004, from FMLA maternity leave, did defendant assign plaintiff to any duties equivalent to her pre-leave administrative duties.

## PLAINTIFF WAS NOT GIVEN NATALIE'S POSITION OR DUTIES UPON RETURNING FROM FMLA LEAVE

38.    Upon plaintiff's return to work on July 17, 2004, defendant directed plaintiff to sit at Natalie's vacant desk and, from time to time, detailed plaintiff for miscellaneous work at defendant's related business locations.

39.    Defendant was well aware of plaintiff's asthmatic condition, and knew the factors that would trigger or aggravate said condition (see ¶4 above).

40.    During November 2004, plaintiff was hospitalized with a severe asthmatic attack, stemming from having to sit at Natalie's desk, which was in an area of the office that had accumulated significant dust, dirt and grime.

41.    To plaintiff's requests that Natalie's work-area be cleaned of asthma-attack irritants, defendant on one occasion said it "forgot" to clean the

area and on another occasion defendant produced a vacuum and narrated, "we can all vacuum our desks, and everyone can breathe now."

42.     For a portion of the November-December 2004 holiday season, defendant directed plaintiff to work at its East 91st Street, Manhattan, location, the Controller warning plaintiff not to get sick because "Eli" would be watching.

43.     When plaintiff reminded the Controller that if the East 91st Street location is moldy, damp, cold, dusty or dirty, she would almost certainly suffer another asthma attack, the Controller instructed plaintiff to "double up" on her medication to ensure she does not get an asthma attack over the holiday.

44.     By qualification and experience, plaintiff was well qualified to assume the marketing/public relations segment of Natalie's work (see ¶13 above).

45.     Upon plaintiff's return to work on July 17, 2004, defendant did not assign plaintiff to the marketing/public relations segment of Natalie's work.

46.     Upon plaintiff's return to work on July 17, 2004, defendant instructed plaintiff to attend to certain aspects of the bookkeeping, financial and economic modeling and forecasting segment of Natalie's work.

47.    Plaintiff questioned both the non-assignment and assignment referred to in ¶¶45-46, even explaining *inter alia* that the "temp" referred to in ¶¶ 22-23 was formally and by experience more qualified for the ¶46 assignment.

48.    Defendant ignored or rejected plaintiff's protests.

## DEFENDANT HIRES A YOUTH FOR NATALIE's MARKETING/PUBLIC RELATIONS WORK

49.    Plaintiff was qualified to assume the marketing/public relations segment of Natalie's work (see ¶13 above), and duly requested that assignment.

50.    Sometime after plaintiff's return to work on July 17, 2004, defendant informed plaintiff that a young female had been hired or assigned to the marketing/public relations segment of Natalie's work.

## DEFENDANT DENIES PLAINTIFF HER ANNUAL BONUS

51.    It has been defendant's custom and practice to pay a yearly bonus to certain employees who have completed one year of service.

52.    During February 2005, defendant paid the customary yearly bonus to all eligible employees except plaintiff.

53.     Upon information and belief, the "temp" who replaced plaintiff in April 2004 (see ¶¶22-23 above) received a bonus payment in February 2005 even though she had not completed one year of service with defendant.

## DEFENDANT HIRES A YOUTH FOR THE BOOKKEEPING DEPARTMENT

54.     On an occasion that plaintiff undertook a credit reconciliation task within her pre-leave administrative duties, defendant instructed plaintiff to cease such task because "we're not sure what your babysitting situation is."

55.     During or about early April 2005, defendant hired a much younger Hispanic female into the bookkeeping department.

56.     The Hispanic female referred to in ¶55 above was assigned bookkeeping functions similar to plaintiff's pre-FMLA leave bookkeeping functions.

57.     The Hispanic female referred to in ¶55 above was assigned administrative duties similar to plaintiff's pre-FMLA leave administrative duties.

58.     Upon information and belief, the Hispanic female referred to in ¶55 above may also have been assigned bookkeeping functions that plaintiff, in light of her qualification and experience, could reasonably have undertaken.

59.     Upon information and belief, the Hispanic female referred to in ¶55 above may also have been assigned administrative duties that plaintiff, in light of her qualification and experience, could reasonably have undertaken.

### DEFENDANT FIRES PLAINTIFF

60.     On April 8, 2005 defendant abruptly terminated plaintiff, the Controller then claiming that "there was not enough work for [plaintiff] to do and that [plaintiff] does not fit into the plans for the office."

61.     Defendant's claim to not having enough work for plaintiff to do is factually false, inasmuch as when said claim was made defendant's A/R for Wholesale Sandwiches and Starbucks had not been updated since circa 2000.

62.     Defendant's claim to not having enough work for plaintiff to do is factually false, inasmuch as when said claim was made defendant had an open and available A/R position at Eli's Bread, one of defendant's related business.

63.     Defendant's claim to not having enough work for plaintiff to do is essentially a pretext and a contrivance because, upon information and belief, defendant had suitable and available positions at its related business locations (see ¶7 and fn.2, page 3 above).

64.     Defendant's statement by its Controller that plaintiff "does not fit into the plans for the office" is, upon information and belief, reflective of a discriminatory animus.

## COUNT I   (FMLA violations)

65.     Plaintiff repeats, reiterates, and realleges ¶¶1-64 above, as though fully set forth at length herein.

66.     Defendant unlawfully restrained, denied and interfered with plaintiff's rights under the FMLA in that defendant willfully failed and refused, in violation of 29 U.S.C. § 2614(a)(1)(B), to restore plaintiff to her pre-leave book-keeping position and administrative duties upon her return from maternity leave.

67.     Defendant unlawfully restrained, denied and interfered with plaintiff's rights under the FMLA in that defendant willfully failed and refused, in violation of 29 U.S.C. § 2614(a)(1)(B), to assign plaintiff to a position or duties equivalent to pre-leave position and duties upon her return from maternity leave.

68.     Defendant has unlawfully retaliated against plaintiff in violation of 29 U.S.C. § 2615, in that, for the year ended 2004, defendant vindictively refused to pay plaintiff the customary yearly bonus, as retribution for plaintiff's

earlier protests over the discriminatory post-FMLA leave job assignment and for having earlier exercised her rights under the FMLA to maternity leave.

69.     Defendant has unlawfully retaliated against plaintiff in violation of 29 U.S.C. § 2615, in that, on April 8, 2005, defendant vindictively fired plaintiff as retribution for plaintiff's earlier protests over the discriminatory post-FMLA leave job assignment, and for plaintiff having earlier exercised her rights under the FMLA to maternity leave.

70.     As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained, and will in the future suffer and sustain, unless made wholesome by a judgment of this Court, losses and damages.

## COUNT II   (Title VII Sex and Pregnancy Discrimination)

71.     Plaintiff repeats, reiterates, and realleges ¶¶1-70 above, as though fully set forth at length herein.

72.     Defendant has unlawfully discriminated against plaintiff on the basis of sex and pregnancy, in violation of Title VII, in that, upon information and belief, defendant wrongfully denied plaintiff the terms and conditions of employment afforded to males and non-pregnant employees.

73.     Defendant has unlawfully discriminated against plaintiff on the basis of sex, pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, on account of sex, plaintiff's pregnancy and childbirth, or related medical conditions, defendant willfully assigned and alienated plaintiff from her pre-FMLA leave bookkeeping position and administrative duties.

74.     Defendant unlawfully discriminated against plaintiff on the basis of sex, pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, upon plaintiff's July 17, 2004 return to work from FMLA maternity leave and continuing to date, defendant has willfully refused to restore plaintiff to her pre-leave bookkeeping position and administrative duties.

75.     Defendant unlawfully discriminated against plaintiff on the basis of sex, pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, upon plaintiff's July 17, 2004 return to work from FMLA maternity leave and continuing to date, defendant has willfully refused to assign plaintiff to a position and duties equivalent to her pre-leave position and duties.

76.     Defendant has unlawfully discriminated against plaintiff on the basis of sex, pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, on April 8, 2005, as a result of plaintiff's sex, pregnancy and

16

childbirth, or related medical conditions, defendant willfully fired plaintiff.

77.   Defendant has unlawfully retaliated against plaintiff on the basis of sex and her aforesaid pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, on April 8, 2005, as a result of the aforementioned conditions, defendant willfully fired plaintiff.

78.   Defendant has unlawfully retaliated against plaintiff on the basis of sex, pregnancy, childbirth, or related medical conditions, in violation of Title VII, in that, on April 8, 2005, as a result of plaintiff's disposition to the aforementioned conditions, defendant willfully fired plaintiff.

79.   Defendant has unlawfully discriminated and retaliated against plaintiff on the basis of sex, pregnancy and childbirth, or related medical conditions, in violation of Title VII, in that, for year ended 2004, defendant willfully refused to pay plaintiff the customary yearly bonus, as retribution for plaintiff's aforesaid sex, pregnancy and childbirth, or related medical conditions, and plaintiff's earlier protests over the discriminatory post-FMLA leave job assignment.

80.   As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained, and will in the future suffer and sustain, unless made

wholesome by a judgment of this Court, losses and damages.

## COUNT III   (§ 1981 Race Based Discrimination)

81.    Plaintiff repeats, reiterates, and realleges ¶¶1-80 above, as though fully set forth at length herein.

82.    Defendant has intentionally discriminated against plaintiff, in violation of § 1981, in that, during the three-year limitation period, defendant unlawfully discriminated against plaintiff on the basis of race by, *inter alia*, denying plaintiff the right to make and enforce contracts and depriving plaintiff of similar terms and conditions of employment as are afforded white employees.

83.    During the limitation period herein, defendant required plaintiff to punch a time-clock, and did not require similarly situated white employees to punch a time-clock until plaintiff protested.

84.    Upon information and belief, on April 8, 2005, defendant, in violation of § 1981, fired plaintiff on the ground of race.

85.    As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained losses and damages.

## COUNT IV   (Title VII Race Discrimination)

86.    Plaintiff repeats, reiterates, and realleges ¶¶1-85 above, as though fully set forth at length herein.

87.    Defendant has unlawfully discriminated against plaintiff in violation of Title VII, by denying plaintiff, on the basis of race, similar terms and conditions of employment as are afforded to white employees.

88.    On April 8, 2005 defendant, upon information and belief, fired plaintiff in violation of Title VII's proscription against racial discrimination.

89.    During the limitation period herein, defendant unlawfully retaliated against plaintiff because plaintiff engaged in protected activity.

90.    About March-May 2006, defendant further unlawfully retaliated against plaintiff, the initial evidence being that a prospective employer suddenly declined to hire plaintiff after plaintiff had undergone four qualifying interviews with that employer-prospect and had effectively been assured of the position.

91.    About April-May 2006, defendant further unlawfully retaliated against plaintiff, the initial evidence being that a second prospective employer

19

suddenly declined to hire plaintiff after an earlier interviewer of that employer-prospect had effectively assured plaintiff of the position.

92.   In what was scheduled as the final job interview, plaintiff mentioned the name of defendant's owner ("Eli") to the interviewer from the prospective employer referred to in ¶90 above, and the interviewer then allowed that he knew Eli.  Soon after this interview, the prospective employer telephoned with news that plaintiff would not be hired for the position.

93.   At a final interview with the prospective employer referred to in ¶91 above, it was uncovered that a board member of that employer-prospect was in almost daily contact with "Eli."  Soon after this interview, the prospective employer telephoned with news that plaintiff would not be hired for the position.

94.   Upon information and belief, defendant maliciously informed the said prospective employers of plaintiff's pending EEOC charge with the result that, as defendant did willfully intend or might reasonably have contemplated, the prospective employers simply walked away from hiring plaintiff.

95.   As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained losses and damages.

## COUNT V   (ADEA)

96.     Plaintiff repeats, reiterates, and realleges ¶¶1-95 above, as though fully set forth at length herein.

97.     In violation of the ADEA, defendant has discriminated against plaintiff on the basis of age by, *inter alia*, subjecting plaintiff to different, more onerous, and discriminatory terms and conditions of employment.

98.     Upon information and belief, on April 8, 2005 defendant unlawfully fired plaintiff on the basis of her age.

99.     As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained losses and damages.

## COUNT VI   (FLSA)

100.   Plaintiff repeats, reiterates, and realleges ¶¶1-99 above, as though fully set forth at length herein.

101.   At all material times during her employment with defendant, plaintiff was a non-exempt employee entitled to overtime pay for hours worked in excess of 8 hours per day and 40 hours per week.

102.   Within the limitation period of the FLSA and during her employment with defendant, plaintiff was required to and did work in excess of 8 hours per day and 40 hours per week without the overtime pay provided by law.

103.   As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained losses and damages.

## COUNT VII   (NYSHRL and NYCHRL Claims)

104.   Plaintiff repeats, reiterates, and realleges ¶¶1-103 above, as though fully set forth at length herein.

105.   In violation of NYSHRL and NYCHRL, defendant has wrongly discriminated against, terminated, and retaliated against plaintiff on the basis of age, race, sex and pregnancy.

106.   As a result of defendant's misconduct here alleged, plaintiff has suffered and sustained losses and damages.

## COUNT VIII   (N.Y. Labor Law Claims)

107.   Plaintiff repeats, reiterates, and realleges ¶¶1-106 above, as though fully set forth at length herein.

108.   Within the limitation period of this statute and during her employment with defendant, plaintiff was required to and did work in excess of 8 hours per day and 40 hours per week without the overtime pay provided by law.

109.   Defendant has unlawfully withheld and has willfully refused to pay over the severance pay to which plaintiff, by custom and practice, was entitled upon termination of employment in April 2005.

110.   Defendant has wrongly withheld and has willfully refused to pay over the bonus to which plaintiff was entitled for the year 2004.

WHEREFORE, plaintiff respectfully prays that this Court enter judgment in her favor and:

A.    Order defendant to pay plaintiff all economic losses she sustained and will in the future sustain, including but not limited to back pay and front pay, lost bonuses, severance pay, and pension and retirement benefits, together with pre-judgment interest;

B.    Order defendant to pay plaintiff compensatory damages, including damages for pain and suffering, mental and emotional distress;

C.      Order defendant to pay plaintiff liquidated damages;

D.      Order defendant to pay plaintiff punitive damages in an amount to be

determined at trial, pursuant to § 1981, Title IIV and the NYCHRL;

E.      Order defendant to pay plaintiff's reasonable counsel fees, costs and

disbursements incurred in this action;

F.      Order any further relief this Court deems reasonable and proper.

Dated:      New York, New York
            August 24, 2006

_____
GARETH W. STEWART, ESQ.
(GS 2371)
% Stevens, Hinds & White, P.C.
116 West 111th Street
New York, New York 10026
(212) 864-4445

Attorney for plaintiff

24